IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CHIQUITA VINSON, | ) | |
| As Administrator of the Estate of | ) | |
| TOCARIOUS JOHNSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 2:22-cv-484-ECM |
| | ) | [WO] |
| FCA US LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

Now pending before the Court are Plaintiff Chiquita Vinson's ("Vinson") motions to remand (docs. 13, 36) and motion to amend her complaint (doc. 38), both of which are opposed by the Defendants FCA US LLC ("FCA") and Auto Funding Group, LLC, doing business as 2nd Chance Auto Sales ("Second Chance").  Also pending before the Court are Second Chance's motion to dismiss and motion to compel arbitration. (Docs. 7, 10).

Vinson is the administrator of the estate of Decedent Tocarius Johnson ("Johnson"). Johnson purchased a used 2010 Dodge Charger ("the Charger") from Second Chance in February 2022.  Johnson purchased the vehicle "As Is."  As part of the purchase, Johnson signed an "Open Vehicle Recall Notice" in which he acknowledged that it was his "responsibility to call the manufacturer and give them the Vehicle Identification Number

1

and have all needed recalls completed as soon as possible." (Docs. 28-1 at 2, 28-2 at 20). The Charger was originally manufactured by FCA.

Vinson alleges that on or about June 6, 2022, Johnson sustained fatal injuries when his "vehicle exited the roadway on the lefthand side for unknown reasons, and a wreck ensued." (Doc. 32-1 at 4).  Vinson alleges that the driver's side airbag in the Charger deployed in an unsafe manner such that it ruptured violently and shot "shrapnel from the metal inflator towards" Johnson. (*Id.*).  This defect in the airbag system, Vinson claims, enhanced Johnson's injuries and resulted in his death.

Vinson initiated this suit on July 7, 2022 in the Circuit Court of Montgomery County, Alabama.  In Count One, Vinson brings a claim against FCA under the Alabama Extended Manufacturer's Liability Doctrine.  Counts Two and Three are negligence and wantonness claims against FCA for its "designing, testing, manufacturing, inspecting, marketing, distributing and selling" the airbag system in question. (*Id.* at 10).  In Count Four, Vinson alleges a "negligence and/or wantonness" claim against Second Chance. Count Four alleges that "[Second Chance] was negligent and/or wanton in its identification, remedy or warning of defects and dangers in the subject vehicle, including but not limited to those associated with the driver's side airbag system.  [Second Chance] sold a vehicle subject to recall to Plaintiff's decedent." (*Id.* at 11).

FCA removed proceedings to this Court on August 12, 2022 on the basis of diversity jurisdiction under 28 U.S.C. §§ 1332, 1441, and 1446. (Doc. 1).  Although FCA acknowledges that both Johnson and Second Chance are Alabama citizens, FCA argues that Second Chance was fraudulently joined.  Thus, FCA argues, Second Chance's

citizenship should not be considered for the Court's diversity jurisdiction. As FCA, a non-Alabama citizen, is the only other defendant, FCA argues that complete diversity exists between the parties. FCA also claims that the amount in controversy exceeds $75,000, which Vinson does not dispute.

On September 9, 2022, Vinson filed her initial motion to remand on the basis that Second Chance was not fraudulently joined. Thus, Vinson argues, complete diversity does not exist between the parties, and the Court must remand this case to state court for lack of subject-matter jurisdiction. On December 13, 2022, Vinson filed a motion to amend, seeking to add B & H Investments, Inc. ("B & H") as an additional defendant. B & H is an Alabama citizen.

Upon consideration of the motions, and for the reasons that follow, the Court concludes that the motion to remand is due to be DENIED, the motion to amend is due to be DENIED, and Second Chance's motion to dismiss is due to be GRANTED.

## II.  STANDARD OF REVIEW

"Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (citing 28 U.S.C. § 1441(a)), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). "When a defendant removes a case to federal court on diversity grounds, a court must remand the matter back to state court if any of the properly joined parties in interest are citizens of the state in which the suit was filed." *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). When a case is removed to federal court, a removing defendant's

burden to establish federal jurisdiction is "a heavy one." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). Any questions or doubts are to be resolved in favor of returning the matter to state court on a properly submitted motion to remand. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

## III. DISCUSSION

### A. Fraudulent Joinder

FCA claims that Second Chance was fraudulently joined. Fraudulent joinder allows an exception to the Court's complete diversity requirement if "there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Id.* However, "a possible state law claim must 'be reasonable' and 'not merely theoretical.'" *Holmes v. Fresenius Kidney Care of Tuskegee*, 2021 WL 2292792, at *4 (M.D. Ala. June 4, 2021) (quoting *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005)). The defendant must establish fraudulent joinder "by clear and convincing evidence." *Henderson*, 454 F.3d at 1281.

The Defendants argue that Second Chance was fraudulently joined because Alabama's Innocent Seller Statute ("ISS") shields Second Chance from suit. Thus, the Defendants argue, Vinson's claims against Second Chance have no basis under Alabama law. The ISS provides as a general rule that "[n]o product liability action may be asserted

4

or may be provided a claim for relief against" the "seller of a product." Ala. Code § 6-5-521(b).  The ISS defines a product liability action as "any action brought by a natural person for personal injury, death, or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, or labeling of a manufactured product." *Id.* § 6-5-521(a).  However, the ISS "is not intended to protect distributors from independent acts unrelated to the product design or manufacture, such as independent acts of negligence, wantonness, warranty violations, or fraud." *Id.* § 6-5-521(b)(4).

Vinson argues that the ISS does not preclude her claims against Second Chance because she alleges independent acts of negligence and wantonness that are unrelated to the Charger's design or manufacture.  Vinson's complaint makes two distinct allegations against Second Chance: 1) that Second Chance failed to identify, remedy, or warn Johnson of the Charger's defect and 2) that Second Chance sold the Charger to Johnson while the Charger was subject to a recall.  In her motion to remand, Vinson relies entirely on her second allegation in arguing that she pleaded an independent claim against Second Chance that is not precluded by the ISS.

Notably, Vinson does not respond to the Defendants' argument that her first allegations—that Second Chance failed to identify, remedy, or warn Johnson of the Charger's defect—are precluded by the ISS.  Courts have previously found that similar allegations have no basis under Alabama law. *McCuistian v. LG Elecs. U.S.A., Inc.*, 2016 WL 8729835, at *7 (M.D. Ala. Dec. 2, 2016) (finding Alabama law did not support plaintiff's argument that independent seller had duty to test, inspect, or identify defects in

product); *Sewell v. Smith & Wesson Holding Corp.*, 2012 WL 2046830, at *2 (N.D. Ala. June 1, 2012) (finding plaintiff's failure to warn claim against independent seller precluded by ISS). Further, the ISS's plain language supports precluding Vinson's first allegations. The statute's definition of a products liability action includes the terms "warning" and "testing." A seller necessarily must test a product to "identify" or "remedy" its defects. Here, there is no question that the defective airbag was related to the Charger's design or manufacture. Thus, the Defendants have established by clear and convincing evidence that Vinson's first allegations against Second Chance have no basis under Alabama law.

Vinson argues that her second allegation—that Second Chance sold the Charger to Johnson while it was subject to recall—is an independent claim against Second Chance that is not precluded by the ISS. Vinson relies on a line of cases that have found independent acts of negligence when a plaintiff alleges that an independent seller knew or should have known that it was selling a dangerous product. *See, e.g.*, *Lazenby v. ExMark Mfg. Co., Inc.*, 2012 WL 3231331, at *3 (M.D. Ala. Aug. 6, 2012) ("The decision to stock and sell a product that was known to be likely or probable to cause injury could constitute an independent act of wantonness that is separate from any act related to the design or manufacture of the product itself."); *Barnes v. Gen. Motors, LLC*, 2014 WL 2999188, at *5 (N.D. Ala. July 1, 2014) ("[I]t is plausible that the drafters of [the ISS] did not intend for it to immunize sellers who deliberately choose to sell dangerous products to unwary consumers."). Vinson argues that she has alleged that Second Chance sold a product that it knew to be dangerous. The Defendants respond, and the Court agrees, that Vinson did not allege that Second Chance knowingly sold a dangerous product. Vinson alleged that

Second Chance sold a product subject to recall, not that it did so knowingly.   Vinson concedes this point in her reply brief, where she admits that she "did not specifically state that [Second Chance] knew or should have known of a defect or recall in her Complaint." (Doc. 35 at 4).

The Defendants draw two key distinctions between Vinson's case and the *Lazenby* line of cases on which she relies.   First, Vinson's claims involve a used product whereas the *Lazenby* cases involved new products.   Second, Johnson contractually accepted the obligations Vinson now attempts to place on Second Chance—a factor not present in the *Lazenby* cases.   Specifically, Johnson signed an "Open Vehicle Recall Notice" and acknowledged that it was his "responsibility to . . . have all needed recalls completed as soon as possible." (Docs. 28-1 at 2, 28-2 at 20).   Thus, Johnson was aware of potential outstanding recalls on the Charger at the time of sale and accepted responsibility for completing those recalls.   Vinson does not argue that this provision does not apply or explain how Second Chance maintained a duty to Johnson when this agreement stated otherwise.[1]

Accordingly, the Defendants have established by clear and convincing evidence that Vinson has alleged no possible cause of action against Second Chance.   Therefore, Second Chance was fraudulently joined, and the Court will disregard Second Chance's citizenship for the purposes of diversity jurisdiction.   Because FCA, a non-Alabama citizen, is the only

---

[1] While the recall notice instructed Johnson to "[s]ee attached page(s) for recalls that have not been completed," (doc. 28-2 at 20), Vinson has not alleged that Second Chance made any misrepresentations about the Charger's outstanding warranties.

remaining defendant, complete diversity exists between the parties, and this Court has diversity jurisdiction over this proceeding.  Further, because the Court finds that Vinson has no possible cause of action against Second Chance, Second Chance's motion to dismiss on those grounds is due to be granted.[2]

### B.  Motion for Leave to Amend

Vinson moves to amend her complaint and add B & H as a defendant.  As B & H is an Alabama citizen, this Court will not maintain diversity jurisdiction if Vinson's amendment is allowed.  Vinson claims that B & H performed maintenance work on the Charger at least five times between June 11, 2018 and September 2, 2020.  Vinson seeks to add wantonness and negligence allegations against B & H for failing to warn Johnson about the Charger's outstanding recalls.  The Defendants oppose Vinson's motion to amend; they argue that Vinson seeks to add a meritless claim to destroy this Court's diversity jurisdiction.

Typically, courts "should freely give leave [to amend a complaint] when justice so requires." *See* Fed. R. Civ. P. 15(a)(2).  However, "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder. . . ." 28 U.S.C. § 1447(e).  "[A] district court must scrutinize more closely an amended pleading that would name a new nondiverse defendant in a removed case because justice requires that the district court also balance the defendant's interests in

---

[2] Second Chance's motion to compel arbitration is due to be denied as moot. (Doc. 10).

maintaining the federal forum." *Dever v. Fam. Dollar Stores of Ga., LLC*, 775 Fed. App'x 866, 869 (11th Cir. 2018).

In an unpublished opinion, the Eleventh Circuit weighed "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether [the] plaintiff has been dilatory in asking for amendment, whether [the] plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities" in balancing whether to allow post-removal amendment. *Id.* "[A] district court has broad discretion in weighing these factors to decide whether to permit or deny an amendment." *Id.*

In *Holmes*, this Court discussed two situations in which courts typically allow post-removal additions of parties. In the first situation, courts typically allow a plaintiff to amend a complaint to make a discrete change after discovering the identity of a party that was previously described with specificity in the complaint. *See Holmes*, 2021 WL 2292792, at *3. In the second situation, "courts have allowed post-removal motions to amend when the plaintiffs merely 'sought to clarify [existing] claims against an existing defendant.'" *Id.* (quoting *Landrum v. Delta Int'l Mach. Corp.*, 2008 WL 2326324, at *4 (M.D. Ala. June 3, 2008)). Conversely, courts are more likely to deny motions to amend when a plaintiff seeks to introduce "an entirely new theory" to the case. *Id.*

Here, Vinson's amendment does not coincide with either of the above-mentioned appropriate reasons for post-removal amendment. Vinson did not previously describe B & H in her complaint with any specificity, nor is B & H an existing defendant in this case. Rather, Vinson seeks to introduce a new theory against a new non-diverse defendant. Vinson's motion to amend falls squarely in line with the cases in which courts typically

deny motions to amend.   Balancing the Eleventh Circuit's factors renders this same conclusion.

The circumstances surrounding Vinson's motion to amend strongly suggest that Vinson filed her motion for the purpose of destroying this Court's diversity jurisdiction. First, the timing of Vinson's motion to amend is suspect: she attempts to join a new non-diverse defendant after removal but before discovery. *Linares v. Home Depot U.S.A., Inc.*, 2012 WL 1441577, at *2 (S.D. Fla. Apr. 26, 2012) ("Plaintiff seeks to add a non-diverse defendant immediately after removal but before discovery, which suggests that the amendment is done with 'specific purpose of destroying diversity jurisdiction.'") (quoting *Ibis Villas at Mia. Gardens Condo Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 799 F. Supp. 2d 1333, 1335 (S.D. Fla. 2011)).   Second, the merits of Vinson's claim—that B & H owed a duty to Johnson, who purchased the Charger over a year after B & H last serviced the vehicle—are dubious at best. *Smith v. White Consol. Indus., Inc.*, 229 F. Supp. 2d 1275, 1280 (N.D. Ala. 2002) ("[I]f the claim against the non-diverse defendant is relatively weak or has no merit, that factor should be taken into account and would weigh against joinder."). Finally, Vinson fraudulently joined a different defendant in a separate attempt to destroy this Court's diversity jurisdiction, increasing the likelihood that this motion has the same purpose.   This factor strongly weighs in favor of denying Vinson's motion.

Further, FCA has an interest in pursuing this case in its chosen federal forum. *Id.* at 1282 ("One focus of recent opinions analyzing whether to allow joinder of a non-diverse party has been the interest of the diverse defendants in their choice of a federal forum."). And while the Court cannot say that Vinson has been dilatory in bringing her claim against

B & H, she will not be significantly harmed if she cannot bring that claim with these proceedings.  If Vinson truly wishes to bring a claim against B & H, she may file a separate action in state court. *See Temple v. Synthes Corp.*, 498 U.S. 5, 8 (1990) (explaining that joint tortfeasors are permissive parties).   Balancing these factors and the appropriate equities, the Court finds that Vinson's motion to amend her complaint is due to be denied. Accordingly, there is complete diversity between Vinson and FCA, the sole remaining parties, and Vinson's motion to remand is due to be denied.

## IV.  CONCLUSION

For the reasons stated above, it is ORDERED as follows:

1. The Defendant Second Chance's motion to dismiss (docs. 7, 10) is GRANTED.

2. The Defendant Second Chance's motion to compel arbitration (doc. 10) is DENIED as moot.

3. The Plaintiff's Motion to Amend (doc. 38) is DENIED.

4. The Plaintiff's Motions to Remand (docs. 13, 36) are DENIED.

DONE this 14th day of March, 2023.


_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE